Please the court, counsel, your honors, my name is Tom Cogley and I represent the appellant in this matter, Mr. Eric Virrueta. Today I hope to convince you that you should overturn the district court's decision denying our motion to suppress evidence that we believe was the result of unlawful police conduct. This case started a little over two years ago today, June 12th, 2022, in Watertown, South Dakota. There was an off-duty police detective who observed an unknown male and a female that the detective did know by the name of Scarlett trying to send a money order or some wire transaction at a local Walgreens there in Watertown. As I mentioned, the male was not known to this officer. The female allegedly had a drug history. We'll get into that a bit later. The pair got into a white van. This information was relayed to Corporal Ryan Fisher, who was on patrol that night. Fisher attempted to drive to Walgreens and locate the white van, but he was unable to do so. We are familiar with the facts from the brief, so time might be good to get to the issues Fair enough. Fair enough. The first issue that we'd like to address is the decision that there was probable cause for the stop. Now, it's our position, Your Honors, that the magistrate clearly erred when finding that the officer was able to identify my client behind the wheel of that vehicle. Keep in mind how he came into contact with my client. He first saw the back of him walking into that apartment complex. He drove through the apartment complex, and he ran a plate on the red Grand Prix. It wasn't registered to my client. It was registered to somebody with the same last name. Ultimately, it was a family member of his. The magistrate concluded that even though it was dark out or dusk out, that he would have been able to see and identify my client as the driver of that vehicle. The body cam footage is what the magistrate relied on. In its report and its recommendation, it cited to a period of about ten seconds within that video where, based on that, the magistrate believed that my client could have been clearly identified. The issue that we take with that is, if you go back and you review that Axon camera or that body camera, during that period of time, what you're actually seeing is the officer parked directly behind the Grand Prix. The lights are shining into the Grand Prix, and you can't see inside of the Grand Prix. The officer steps out of his patrol vehicle. He immediately uses his flashlight as he walks towards the vehicle. At one point in time, he shines it into the back driver's side window, but he doesn't see anything. My client had already rolled down his window, so, of course, he could identify him that way. Counsel, in addition to the body cam video, wasn't there also officer testimony as to the identification? The officer testified that he could see through the tinted windows of the vehicle as my client. So the officer is parked sort of adjacent on a side street, and my client is driving towards him, and he testified that he could see through the windshield and identify my client. Wouldn't, on appeal, wouldn't that be a credibility determination? Ordinarily, Your Honor, yes, but you also have an opportunity to review the body cam footage itself and make a determination as to whether or not the officer is being credible. If we look at the body cam footage itself, what you end up with is that it's not quite dark. It's still dusk, right? The sky is not quite black, right? You've got the body cam footage is showing the lights from the automobile and what you can see or can't see. There's some reflection going on there, but, you know, the camera picks up reflections in a different way than the human eye does, right? I mean, if you just think about it, you know, most of the time your phone sees better than you see, right? So I'm assuming the body cam mostly sees better than you see, but there are times when just because of the way that light is being refracted and reflected that you see things that don't get caught up in a photographic image, right? And so we have the officer's testimony. If it is a credibility determination, it's really virtually unreviewable for us because, you know, we have to defer to the magistrate judge in the district court. That's fair, Your Honor. I thought the Supreme Court said a body has to be irrefutably contrary to the finding. That was the Brown case, I can't remember. I think that's correct, Your Honor. And to go to the officer's credibility argument, of course, I don't have any way of proving whether or not the officer is telling the truth about that particular issue, but I think if you look at the context of the stop and the context of his interaction with Eric and you compare that with what he testified to, and what I mean by that is the real-time conduct that happened versus what he testified to, and the biggest example, I guess, that I would give you is the testimony that he believed he was smelling the odor of raw marijuana emanating from the vehicle. The body cam footage and the transcript, which was also introduced as the transcript of the interaction between him and Eric, which was also introduced as an exhibit, he never once talks to Eric about, hey, I smell raw marijuana. What he does say to him is, I'm smelling marijuana. Do you have a marijuana card? Have you smoked marijuana recently? It begs the question, at least in my mind, if what he is smelling is raw marijuana, why is he asking him about whether or not he smoked? He makes a distinction during the suppression hearing about the difference between burnt marijuana and raw marijuana, but at no point during that interaction does he say to Eric, look, it's all well and good, you're telling me that you smoked, but that's not— I was addressing the credibility question about the officer. But on the stop, we have an express finding that the officer was credible when he said he could see enough to make the initial stop. We don't second-guess that unless there is camera or other objective evidence that can be reviewed by an appellate court that clearly refutes the finding. So what case have you got that does that in the Eighth Circuit here, that helps you here? Well, I don't have a case that would clearly refute what the officer claims to see, but I do have the body cam footage, and I have the fact that the officer, at least in my opinion, I guess the phrase that I would use is his memory after the fact seemed to do more to support his reason. And you're right, what I was talking about was the extension of the stop, but I was trying to address Judge Erickson's position about credibility. And at no— So I'm guessing what you're arguing here is this, is essentially that, you know, for years, we've instructed fact-finders and juries generally that if you find that a witness is unreliable in one area, that you may infer that they're unreliable in all areas, right? So your claim is that because the officer's not credible, and his explanation is to the smell of raw marijuana, because it's at the time of the stop, that we can question the credibility finding. And we do have that body of case law that says unless the credibility finding is undermined by like a video or other physical evidence that uncontrovertibly, you know, establishes a fact, I think that's the word that this court used. I'm not 100% on it, but that still has us sitting here in this relatively difficult spot, right? Because, you know, we'd have to find that the officer actually lied about the smell of raw marijuana. And one of the problems we have is we're supposed to view the light, the evidence in the light that supports the credibility finding of the judge, and the judge said that was credible. And the conversation doesn't say, I smell burnt marijuana, have you been smoking? It just asks us questions. And I'm sure that if the officer were here, he'd argue that asking about the presence of the raw smell of marijuana would be sufficient to raise these same questions. Do you have a permit? Have you smoked lately? I think that's all correct, Your Honor, in terms of the context of what you're saying, but I think all of those things taken together would demonstrate that the officer was not credible, and that's, you're right, that's what I'm asking you to find here. We also have issues with the extension of the stop. The officer testified, of course, that he was sitting there waiting to find, sitting there between 30 and 60 minutes waiting to see if somebody without a as he gets into the cop car, he radios for backup. This is before he's ever questioned Eric about smoking marijuana or anything like that, and so it's clear from the very beginning that his purpose is to search this vehicle, and everything that he does after that is intended to do that. Ultimately, we don't believe that there was probable cause to search that vehicle. I don't know that the, I don't believe that the officer really believed that there was either, or he wouldn't have called the parole officer to see if he could get permission for that. The issue that I have with reliance on the parole agreement is it's subject to a reasonable suspicion standard, and I don't believe that the officer had reasonable suspicion to search the vehicle. Well, if you have the smell, if you give credence to the Yes, but in real time, he wasn't giving any credence to raw marijuana. He was talking about Eric smoking it. I think that the parole agreement probably would have authorized the officer to do a reasonable suspicion search of Eric's person, and if he had found something on Eric's person, perhaps the stop could have been extended that way. It probably could have given him reasonable suspicion to ask the parole officer to have Eric take a drug test to determine whether or not the presence of marijuana was in his system, but that's not the same as a reasonable suspicion necessary to search the vehicle. They're two separate entities. I do see that my time for rebuttal is coming near, and so unless there are additional questions, I'll have a seat for now. But I have, what struck me here is why, why are we focusing on whether there was suspicion to know who the driver was? It seems to me there was, there seemed to me to be enough suspicion to stop the car initially, regardless of whether he could see for sure who the driver was. Was that argued in the district court? Yes, Your Honor. I don't believe there was enough reasonable suspicion whether he saw it or not. Keep in mind what the off-duty detective talked about was seeing this female by the name of Scarlett and an unknown male doing a money order. And leaving in a white van. And leaving in a white van. Traced down the white van, and they find it's, you know, they have reason to suspect without what they could see it when they arrived that he was the driver, that your client was the driver. Not that they knew, but it seems to me they had enough surrounding suspicion regarding the van and the events. But the van isn't... But the district court didn't focus on that, and I'm not sure why, but maybe it doesn't matter. Yeah. Well, the van isn't the vehicle that was pulled over. It was a red, it was the red Grand Prix that was pulled over. But they, okay, but they were together at the... Well, so when the officer comes to the apartment, he does see the two of them entering together, but he doesn't see them getting out of the white van together. It's an apartment complex. It's not just a single unit. Okay. Anyway. And we could address it more when I come back, Your Honors. Thank you. Ms. Peterson? May it please the Court, Counsel? My name is Paige Peterson, and I am representing the appellee, the United States, in this case. And before this Court is really one main issue, which is whether or not the lower court erred in denying motion to suppress the stop and search of the defendant's vehicle in this case. We break that down into a couple of subparts, starting with the first constitutional matter that comes before the Court, which is the stop of the defendant's vehicle in this case. Simply put, Corporal Fisher saw the defendant operating a motor vehicle in violation of South Dakota codified law, because he did not have a valid driver's license, which he confirmed before that stop. And then he performed a traffic stop based on that violation. Counsel, would you agree that, but for the identification of the driver, there would not be reasonable suspicion to have stopped the Grand Prix? I do agree with that. I would also state that all he needed was that reasonable suspicion that that individual, the defendant, was the driver of that vehicle. I understand there was some back and forth about even determining his identification, looking through the window. But even the subsequent facts that predate that, that Corporal Fisher were able to gather between the off-duty detective and his own looking into the vehicle, and the person that he saw in general, still rise to that reasonable suspicion that the person operating that motor vehicle was, in fact, the defendant. We then would also move on to the second portion of that, which would be the expansion of the stop as well as the search of the vehicle. But starting off with the stop of that vehicle, I would simply submit that there was the violation of South Dakota law that was viewed, the operating of a motor vehicle without a valid driver's license, and the stop was sufficient. In addition to the arguments about whether or not he was able to see the person, I would also again point back to the facts predating that, which are the observations by Corporal Fisher seeing the individual from the back, but having distinct features of that individual, he was able to relay back to the off-duty detective who was at that Walgreens, as mentioned by opposing counsel in his argument as well. A booking photo was also sent to that individual, and he also confirmed with a photo, yep, that's the same guy. So all of that, even before seeing the defendant inside of the vehicle operating it, is enough, in our opinion, to have stopped that vehicle. But I would also agree with the lower court, any sort of credibility standpoint from the officer, he was found credible, and that is reviewed by this court for clear error, which there simply is not, based on the evidence and that body camera that's already been mentioned. We would then move on to that second portion of this argument, which would be the extension of the stop, the next constitutional matter that we have before the court. Now that extension of the stop has to be supported by reasonable suspicion that there is further criminal activity taking place outside of that violation of law that was the reason for the stop initially. And that was reviewed in multiple ways by Corporal Fisher. First and foremost, and most importantly, I would submit, is that odor of raw marijuana when the corporal immediately approaches the vehicle. There's additional, some suspicious behavior relayed by the defendant as well. When he was asked to leave the vehicle, he rolled up the windows, turned off the car, locked the door. He brought with him a bottle of cologne to the back, to the patrol vehicle, and then when sitting in the patrol vehicle, he left the door open. So taken totality-wise for the corporal, that's additional suspicion of criminal activity taking place. While also sitting in that patrol vehicle while working on the citation for the, for not having the valid driver's license, Corporal Fisher engaged in conversation with the defendant. He admitted to ingesting marijuana about an hour before the stop, which would, of course, contradict the raw marijuana scent versus the burnt marijuana scent that Corporal Fisher testifies to in that suppression hearing. Further expanding that suspicion of more criminal activity taking place, and Corporal Fisher getting further authorization to expand this stop to now also investigate drug violations. Because, of course, at the time, marijuana is still illegal in South Dakota. It still is today. There is a medical marijuana exception, and that exception did apply in 2022. But there was also the question of, do you have a medical marijuana card? And the answer was no by the defendant. So as we move through the expansion of the stop, we then, of course, get to the search of the vehicle in this case, which is another constitutional matter that takes place outside of just expansion of the stop to further investigate this. And again, very simply put, this Court has made it clear time and time again, the odor of marijuana gives probable cause for the officer to search the vehicle. Simply put, that is what we have here today. We have additional suspicion, of course, relayed by the defendant to support that, especially when it comes to drug use and drug possession. But we also have an interesting other layer to all of this, and that is the defendant's parole status. Well, even if he was somehow possessing the marijuana legally, didn't the parole agreement prohibit the possession of the substance? It did. It prohibited possession of the substance as well as use of it. And so there was also the admission by the defendant that he had ingested marijuana an hour before. And Corporal Fisher, of course, did testify that he's somewhat familiar. He's a 14-year veteran of law enforcement within South Dakota, so he's familiar with those basic terms and conditions of parole. But yes, that would be another violation as well. So even medical marijuana card or not could not do it. But within his parole agreement, there's also the standard clause that there has to be reasonable suspicion present for him to be searched his person, personal property, vehicle, et cetera. And that's what we have before the Court here today. I understand that there have been other rulings that there doesn't have to be any sort of suspicion present for a parolee to be searched. But the terms for South Dakota are that there has to be reasonable suspicion. So we would argue that there was reasonable suspicion and that is the standard to apply if we're focusing on someone with a parole status. So when Eric was stopped, excuse me, when the defendant, Mr. Viruetta, was stopped, Corporal Fisher was aware that he had that parole status at that time. After he had gathered further suspicion of drug activity, he then went even a step further, which in my opinion and in the United States' opinion, he didn't even have to do. He could have performed that search right then and there based on what he'd already gathered. But he took the extra step to contact the defendant's parole officer. And that parole officer confirmed everything else for him. Eric was outside of city limits. He was supposed to be in Sioux Falls, South Dakota. He did not seek permission and was, I guess, outside of the conditions of his parole and violating those conditions was in Watertown, South Dakota at the time. In addition, there was the admission of the drug use, which like we just mentioned was also in violation of his parole terms. And he was, then she also essentially gave permission. Yes, search his vehicle, search his person, search his personal belongings. I give that authority as well as his parole officer. So I guess in totality, we have our different subparts of this stop and the search as a whole. The stop was supported by reasonable suspicion and probable cause, at the very least reasonable suspicion but certainly probable cause, that a violation of South Dakota law was taking place. Corporal Fisher properly identified Eric Riguetta before performing that stop. He was able to identify him in the vehicle and even prior to that with the facts that are supported within the transcript and that the lower court also reviewed that he was able to identify him even beforehand. Then we have the expansion of that stop, which is supported just very simply by that odor of raw marijuana. But I would also point to, and as we point to in our brief, other suspicious behavior that the defendant is exhibiting throughout the entirety of that stop. And then throughout the expansion, we then of course get to the search of the vehicle, which again is simply supported by that odor of marijuana. But in addition to that, we also have that extra layer of Eric Riguetta's parole status for distribution of a controlled substance, which only brings us to a reasonable suspicion standard necessary for that search to be conducted. And I do have some more time left. However, I have made all of my points to the court that I feel are necessary. If there are any other questions, I can take them at this time. Just on the facts, am I right that Corporal Fisher learned about being unlicensed and on parole before the stop? That's correct. So he did a, he ran the, did a check on... Yeah. Okay. He was able to run the Grand Prix plate, did see that it belonged to a woman, and Viriuretta, I believe it ended up being his mother. And then the name Viriuretta, pretty distinct. He was able to find the defendant's identification, his parole status, a mug shot. And that's where he was able to make that identification conclusion. If there are no more questions, that is all I have. Thank you. Thank you. Thank you. Thank you, Your Honor. May it please the court, I only have roughly about a minute left. If the court has any questions, I'm happy to try to answer them. Otherwise, I was hoping to speak just a brief moment about this individual that my client was with because it's undisputed that no one knew who my client was at the time that this incident started. And I think it goes to the probable cause of reasonable suspicion for the stop. It goes to a basis for extending the stop. I think that the officer would have relied on my client's interaction with this female by the name of Scarlett. And the testimony was that she had an extensive drug history, but the officer did have to concede during the suppression hearing a couple of different things. Number one, she only had one felony drug conviction on her record. He did try to explain that away by saying deals get made, charges get reduced. I get that. But when he was asked about when is the last time that he had heard of her name coming up in any drug activity, he pointed to his time as a detective about a year and a half prior to this incident. And so that information that he was relying on with respect to Scarlett, as it's demonstrated here in the record at least, is really, really slim. And so I don't believe reliance on her history would support a finding of a basis of reasonable suspicion in any of those contexts. My time is up, Your Honors. I appreciate it very much. Thank you. Thank you, counsel.